## PEOPLE v DEWALD

Docket No. 251804. Submitted May 4, 2005, at Lansing. Decided May 12, 2005. Approved for publication July 14, 2005, at 9:05 a.m.

Jerome W. Dewald was convicted by a jury in the Ingham Circuit Court, William E. Collette, J., of false pretenses of $1,000 or more but less than $20,000, false pretenses of less than $200, two counts of common-law fraud, and two counts of larceny by conversion. The defendant had formed two political action committees (PACs), Friends for a Democratic White House and Swing States for a GOP White House, that solicited contributions during the 2000 presidential election and subsequent recount. The defendant's convictions arose out of misrepresentations made in the course of those solicitations. The defendant appealed his convictions.

The Court of Appeals *held*:

1. There was sufficient evidence to sustain the defendant's convictions of false pretenses. The prosecution need not disprove the defendant's theory of innocence, but need only prove the elements of the crime beyond a reasonable doubt. The elements of false pretenses are (1) a false representation concerning an existing fact, (2) knowledge by the defendant that the representation is false, (3) use of the representation with an intent to deceive, and (4) detrimental reliance by the victim. The defendant falsely represented that he was affiliated with the Bush and Gore campaigns and their recount efforts. His intent can be inferred from minimal circumstantial evidence, including his knowledge that use of the candidates' names in solicitations was illegal. The victims believed that the money they donated was going to the presidential campaigns, and the victims would not have donated had they known otherwise.

2. There was also sufficient evidence to convict the defendant of common-law fraud. There was evidence that the defendant's use of the Bush and Gore campaign lists to solicit donations decreased the value of those lists to the campaigns, and that the campaigns suffered the loss of the donations made by the victims.

3. There was sufficient evidence to convict the defendant of larceny by conversion. An element of that crime is that the defendant must, at the time the property is converted, intend to defraud or cheat the owner of the property. There was evidence

that the defendant illegally used each campaign's federal disclosure of contributors while implying to those contributors that his PACs were affiliated with the campaigns.

4. The defendant's convictions are not preempted by the Federal Election Campaign Act (FECA). Federal law may preempt state law (1) when Congress expressly states its intent to preempt state law, (2) when state law regulates conduct in an area that Congress intended to occupy exclusively, or (3) when state law actually conflicts with federal law. There is a presumption against preemption, and courts will find a state law preempted only when Congress's intent is clear and unequivocal. When a state law concerns a legitimate exercise of a state's police powers, the party claiming preemption must meet a heavy burden to establish a Supremacy Clause violation. The courts must balance the federal interest against the state's traditional police-powers interest in prosecuting crimes. While the provisions of the FECA indicate that the law preempts state law with respect to election to federal office, courts have given those provisions a narrow preemptive effect in light of the legislative history. Congress did not intend the criminal sanctions of the FECA to be a substitute for all other possible criminal sentences, and the state laws involved in this case do not conflict with federal law.

5. The trial court did not err by precluding the defendant from presenting a witness whose evidence was not relevant.

6. The defendant was not denied a fair trial by testimony that was not in the form of a legal conclusion and did not concern the ultimate issue of the defendant's guilt or innocence. Moreover, the defendant was able to cross-examine each witness concerning the basis of the witness's factual statements, and the jury was free to accept or reject the testimony.

7. The trial court did not abuse its discretion in the amount of restitution it ordered the defendant to pay. The amount of restitution ordered should be the amount of loss attributable to the defendant's illegal activity. The defendant collected from contributors money that would likely have gone to either the Bush campaign or the Gore campaign. The fact that the defendant ultimately donated some of the money to Democratic or Republican causes does not change the facts that he represented that the money would go to the Bush campaign or the Gore campaign or their recount efforts and that none of the money went to those causes. Nor does the fact that the defendant did not personally benefit to the extent of the amount of restitution ordered render that amount invalid.

8. The defendant is not entitled to resentencing on the basis of *Blakely v Washington*, 542 US 296 (2004), and *Apprendi v New Jersey*, 530 US 466 (2000). *Blakely* does not affect Michigan's indeterminate sentencing scheme.

9. The trial court properly scored twenty-five points for offense variable 9 (OV 9) when scoring the sentencing guidelines for the defendant's convictions of larceny by conversion. OV 9 includes victims of financial injury, and more than six hundred people contributed to the defendant's PACs, each of them properly being considered a victim of the defendant's conduct.

10. The defendant's convictions do not violate his First Amendment rights of free speech and association. The federal and state constitutions provide great protection for speech in the political arena, but this protection is not absolute. Even in the area of political speech, knowing misrepresentations are not constitutionally protected free speech. The defendant's convictions all involve some sort of misrepresentation or fraud, and thus his statements were not protected speech. The defendant was not prosecuted for associating with a political party, but for making false representations that his PACs were affiliated with the presidential campaigns.

11. The statutes prohibiting common-law fraud and larceny by conversion are not unconstitutionally vague. A statute may be challenged for vagueness on the grounds that it (1) is overbroad, impinging on First Amendment freedoms, (2) does not provide fair notice of the conduct proscribed, or (3) is so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine whether an offense has been committed. Common-law fraud requires a finding of a "gross fraud or cheat," and the First Amendment does not protect fraud or public deception. The common meaning of the terms used in the common-law fraud statute prohibit the defendant's conduct in this case. "Gross" means "flagrant and extreme," "fraud" means "a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment," and "cheat" means "to defraud" or "to practice deception." The common-law fraud statute and the larceny-by-conversion statute provide sufficient warning of what is prohibited, and the larceny-by-conversion statute is not unconstitutionally vague as applied to the defendant.

12. The defendant was not subject to vindictive prosecution, which occurs when a defendant is prosecuted for asserting a constitutional right, because his speech was not constitutionally protected.

13. The order of restitution did not violate the defendant's protection against double jeopardy. The Double Jeopardy Clause protects a defendant from multiple punishments for the same offense, ensuring that a defendant's total punishment will not exceed the scope of punishment provided by the Legislature. The restitution ordered was clearly not in excess of the punishment intended by the Legislature because MCL 780.766(2) requires a court to order restitution in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law.

Affirmed.

1. CONSTITUTIONAL LAW — FEDERAL PREEMPTION OF STATE LAW — ELECTION LAW.

A party claiming federal preemption of a state law that concerns a legitimate exercise of a state's police powers must meet a heavy burden to establish a violation of the Supremacy Clause, and a court must balance the federal interest against the state's traditional police-powers interest in prosecuting crimes; Congress did not intend the criminal sanctions of the Federal Election Campaign Act (FECA) to be a substitute for all other possible criminal sanctions; the FECA does not bar convictions for state law crimes, such as false pretenses, common-law fraud, and larceny by conversion, that involve a federal election (2 USC 453).

2. SENTENCES — RESTITUTION — AMOUNT OF RESTITUTION.

The amount of restitution should be the amount of loss attributable to the defendant's illegal activity; the fact that the defendant does not personally benefit to the extent of the amount ordered does not make that amount of restitution invalid.

3. CONSTITUTIONAL LAW — FREEDOM OF SPEECH — POLITICAL SPEECH — FRAUD.

Knowing misrepresentations are not constitutionally protected free speech, and prosecution of a criminal charge involving misrepresentation or fraud in the area of political speech does not violate the First Amendment.

4. FRAUD — COMMON-LAW FRAUD — ELEMENTS — VAGUENESS.

The common-law fraud statute prohibits the commission of any "gross fraud or cheat" at common law; "gross" means "flagrant and extreme," "fraud" is "a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment," and "cheat" is "to defraud" or "to practice

deception"; the statute provides sufficient warning of what is prohibited and is not unconstitutionally vague (MCL 750.280).

5. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — RESTITUTION.

The Double Jeopardy Clause protects a defendant from, among other things, multiple punishments for the same offense, ensuring that a defendant's total punishment will not exceed the scope of punishment provided by the Legislature; an order of restitution is not in excess of the punishment intended by the Legislature, and does not violate the Double Jeopardy Clause, because the statute governing restitution requires a court to order restitution in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law (MCL 780.766[2]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Thomas P. Boyd*, Assistant Attorney General, for the people.

State Appellate Defender (by *Valerie R. Newman*) and Jerome W. Dewald in propria persona for the defendant.

Before: COOPER, P.J., and JANSEN and HOEKSTRA, JJ.

PER CURIAM. Defendant appeals by right his jury trial convictions of false pretenses, $1,000 or more but less than $20,000, MCL 750.218(4)(a); false pretenses, less than $200, MCL 750.218(2); two counts of common-law fraud, MCL 750.280; and two counts of larceny by conversion, $20,000 or more, MCL 750.362. Defendant was sentenced to concurrent terms of sixteen to sixty months' imprisonment for the conviction of false pretenses, $1,000 to $20,000; ninety days in jail for the conviction of false pretenses less than $200; and 23 to 120 months' imprisonment for the two convictions of common-law fraud and the two convictions of larceny by conversion. We affirm.

Defendant's convictions stem from his operation of two political action committees (PACs) during the 2000

election campaign and recount. Defendant was the chief of staff of both Friends for a Democratic White House (Friends) and Swing States for a GOP White House (Swing States). Defendant also incorporated PAC Services, with the purpose of providing services to the PACs defendant had formed. Defendant solicited contributions through mailings. A contention at trial was that defendant's mailing lists were stolen from the Federal Election Commission (FEC) disclosure statements of the 2000 presidential campaigns of both Al Gore and George W. Bush. These statements list the contributors to each campaign and appear on the FEC website, along with a warning that the lists are for informational purposes only and may not be used for commercial or solicitation purposes.

Defendant's PACs collected about $700,000 in contributions. Three victims of defendant's solicitation letters testified at trial. All testified that the solicitation letters they received implied an affiliation with either the Bush campaign or the Gore campaign. They also testified that they donated to the PAC that solicited them because the letter led them to believe that their contributions would go to either the Bush campaign or the Gore campaign. They also testified that they would not have given money to the PAC if they had known that the money was not going to either the Bush campaign or the Gore campaign. Defendant's PACs did give money to Democratic and Republican causes, but checks they attempted to give to the Republican National Committee and the Gore campaign were returned, i.e., those entities refused to accept the donations.

Defendant first argues that there was insufficient evidence to sustain his convictions. We disagree. The standard of review for sufficiency of the evidence claims

in criminal cases is "whether the evidence, viewed in a light most favorable to the people, would warrant a reasonable juror in finding" that all the elements of the crime were proven beyond a reasonable doubt. *People v Nowack*, 462 Mich 392, 399; 614 NW2d 78 (2000). A reviewing court should not interfere with the jury's role in determining credibility of witnesses and weighing the evidence. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), amended on other grounds 441 Mich 1201 (1992). The prosecution does not have to disprove the defendant's theory of innocence. *Nowack, supra* at 400. Rather, the prosecution need only prove the elements of the crime beyond a reasonable doubt. *Id.* Additionally, "[i]t is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

In order to prove false pretenses, the prosecution must show (1) a false representation concerning an existing fact, (2) knowledge by the defendant that the representation is false, (3) use of the representation with an intent to deceive, and (4) detrimental reliance by the victim. *People v Reigle*, 223 Mich App 34, 37-38; 566 NW2d 21 (1997). We find that the prosecution presented sufficient evidence on each element to sustain defendant's convictions for false pretenses. Defendant, through the solicitation letters, represented that he was affiliated with either the Bush campaign or the Gore campaign and the language in his letters implied that he knew the individuals to be past donors to the campaign.[1] Defendant used the candidates' names in his solicitation letters. Defendant's later letters repre-

---

[1] Defendant is correct in arguing that false pretenses cannot be based on a misrepresentation of a future event. *People v Cage*, 410 Mich 401,

sented that he was affiliated with the recount effort of each campaign after the election. These representations were not true because defendant's PACs were not affiliated with either party or its recount effort. It was also undisputed that defendant knew that these representations were false, because he knew that he was not affiliated with either political party's candidate for president.

There was also evidence that defendant used the representations with an intent to deceive. A defendant's intent to deceive can be inferred from the evidence, *Reigle, supra* at 39, and minimal circumstantial evidence is sufficient to prove a defendant's intent, *People v Guthrie*, 262 Mich App 416, 419; 686 NW2d 767 (2004). There was evidence presented at the trial that defendant used the candidates' names in his solicitation letters, knowing that this use was illegal. Defendant informed an investigator that he learned how to operate a PAC by reading the FEC guide. This guide clearly stated that it was not proper for a PAC to use a candidate's name in its solicitations. There was also testimony from the counsel for the Republican National Committee that he sent defendant a cease-and-desist letter, informing him of his illegal and misleading use of Bush's name in his solicitations. Evidence indicated that defendant mailed additional letters using Bush's name after this letter. The circumstantial evidence presented at trial supported the prosecution's theory that defendant used misrepresentations that he was affiliated with each political party with an intent to deceive potential donors into giving money to his PACs.

There was also detrimental reliance by the victims. Each victim testified that he or she donated money to

404; 301 NW2d 819 (1981). However, defendant made misrepresentation about an existing fact: that he was affiliated with both the Bush and Gore campaigns.

one of defendant's PACs. The victims also testified that they believed that the money was going to either the Bush campaign or the Gore campaign and that they relied on this in sending the donations. The victims also testified that they would not have sent in the donations if they had known that the money was not going to the respective campaigns. In addition, a victim testified that she sent a $200 donation to Friends and that her check was cashed. Another victim testified that he sent a check for $1,000 to Friends because he received the letter in the mail that asked him to assist Gore in his election campaign. And another victim testified that he wrote a check for $100 to Swing States and that check was ultimately cashed.

For these reasons, we find that there was sufficient evidence for the jury to find defendant guilty of false pretenses, $1,000 or more but less than $20,000, and false pretenses, less than $200.

Defendant also argues that there was insufficient evidence to find him guilty of two counts of common-law fraud because the Bush and Gore campaigns did not suffer any loss. We disagree. MCL 750.280 defines the crime as the commission "of any gross fraud or cheat at common law . . . ." Defendant's convictions for common-law fraud were based on the losses suffered by the Bush and Gore campaigns as a result of defendant's solicitation of Bush and Gore donors. Testimony at trial showed that defendant collected more than $700,000 in donations using the campaign lists of Bush and Gore contributors. There was expert testimony at trial that the repeated use of these lists decreased their value, resulting in the campaigns suffering a loss. There was also testimony from the victims that they believed their donations were going to the Bush campaign or the Gore campaign and that they would not have given to defen-

dant's PACs if they had known that the money was not going to the respective campaign. It can be inferred from this that the campaigns suffered losses because the victims wanted their donations to go to the campaigns, but instead the money went where defendant saw fit. As such, we find that there was sufficient evidence to support defendant's convictions for common-law fraud.

Defendant also argues that there was insufficient evidence to support his convictions of larceny by conversion because there was insufficient evidence that defendant intended to defraud anyone. We disagree. An element of larceny by conversion is that the defendant must, at the time the property is converted, intend to defraud or cheat the owner of the property. *People v Scott*, 72 Mich App 16, 19; 248 NW2d 693 (1976). There was evidence presented at the trial that supported the theory that defendant illegally used each campaign's FEC disclosure of contributors. Swing States' mailing list contained fictitious names used by the Bush campaign in its FEC disclosure, and Friends' mailing list contained errors that matched errors made in the Gore campaign's FEC filings. The FEC guide and website both contained warnings that these lists were not to be used for solicitation purposes. By using the lists for solicitation purposes, defendant defrauded the political parties by soliciting further contributions from past donors, while implying that his PACs were affiliated with the campaigns. This evidence of an intent to defraud was sufficient to support the jury verdict.

Defendant next argues that his convictions should be reversed because they are preempted by federal law. We disagree. Determination of whether state law is preempted by federal law is an issue of statutory construction and an issue of law that is reviewed de novo. See

*Westlake Transportation, Inc v Pub Service Comm*, 255 Mich App 589, 595; 662 NW2d 784 (2003). Federal law may preempt state law in three general circumstances: (1) when Congress expressly states its intent to preempt state law, (2) when state law regulates conduct in an area that Congress intended to occupy exclusively, or (3) when the state law actually conflicts with the federal law. *Wayne Co Bd of Comm'rs v Wayne Co Airport Auth*, 253 Mich App 144, 197-198; 658 NW2d 804 (2002). There is a presumption against preemption, and courts will only find a state law preempted when the intent of Congress is clear and unequivocal. *Id.* at 198. When a state law concerns a legitimate exercise of a state's police powers, a party claiming preemption must meet a heavy burden to establish a Supremacy Clause violation. *People v Truong (After Remand)*, 218 Mich App 325, 332; 553 NW2d 692 (1996). The courts must balance the federal interest against the state's traditional police-powers interest in prosecuting crimes. *People v Hegedus*, 432 Mich 598, 618; 443 NW2d 127 (1989).

Congress stated that the provisions of the Federal Election Campaign Act (FECA) "supersede and preempt any provision of State law with respect to election to Federal office." 2 USC 453. However, federal courts have held that " 'courts have given section 453 a narrow preemptive effect in light of its legislative history.' " *Karl Rove & Co v Thornburgh*, 39 F3d 1273, 1280 (CA 5, 1994), quoting *Stern v Gen Electric Co*, 924 F2d 472, 475 n 3 (CA 2, 1991). Additionally, federal courts have held that Congress did not intend the criminal sanctions of the FECA to be a substitute for all other possible criminal sanctions. *United States v Trie*, 21 F Supp 2d 7, 19 (D DC, 1998), citing *United States v Hopkins*, 916 F2d 207, 218 (CA 5, 1990), *United States v Curran*, 20 F3d 560, 566 (CA 3, 1994), and *United*

*States v Oakar*, 924 F Supp 232, 245 (D DC, 1996), rev'd in part on other grounds, 324 US App DC 104 (1997). Defendant was charged with and convicted of Michigan state-law crimes. These crimes are not specifically preempted by 2 USC 453. Defendant does not cite another portion of the federal statute that specifically preempts a state from pursuing criminal charges when the crimes are brought against a factual background that involves an election. There is also no conflict between state and federal law in this area. Defendant's convictions for the crimes at issue were not barred by the FECA. Thus, we reject defendant's federal-preemption argument.

Defendant next argues that the trial court erred by precluding him from presenting an expert witness at trial. We disagree. This Court reviews a trial court's decision on the admissibility of evidence for an abuse of discretion. *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998). "An abuse of discretion is found only if an unprejudiced person, considering the facts on which the trial court acted, would say there was no justification or excuse for the ruling made." *People v Snider*, 239 Mich App 393, 419; 608 NW2d 502 (2000).

The witness[2] was to testify about viewing and printing information from a website, <http://www.tray.com>, that also contains the FEC disclosures. The information on that website was in a different form and did not contain the cautionary language against using the information for a commercial purpose. However, the witness viewed the website and made printouts from it in January or February 2001, which was after defendant had mailed the letters in October and Novem-

---

[2] Defendant argues on appeal that the proposed testimony he offered at trial was expert testimony. However, there was no mention of the fact that this witness was an expert at the trial court level.

ber 2000. Thus, the trial court reasonably determined that this witness's testimony was not relevant and did not abuse its discretion in excluding this evidence.

Defendant next argues that he was denied a fair trial when multiple witnesses testified about factual and legal conclusions. We disagree. Defendant did not preserve this issue before the trial court by objecting to the testimony on the basis that it involved legal or factual conclusions. *People v Bulmer,* 256 Mich App 33, 35; 662 NW2d 117 (2003) ("[A]n objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground."). Therefore, we review this issue for plain error affecting substantial rights. *People v Jones,* 468 Mich 345, 355; 662 NW2d 376 (2003).

A witness is not permitted to testify on questions of law because it is the trial judge's responsibility to find and interpret the law. *People v Lyons,* 93 Mich App 35, 45-46; 285 NW2d 788 (1979). One instance defendant cites was a witness explaining why he drafted a letter to Swing States and what the letter stated. Another instance was a witness reading from the FEC guide that had already been admitted into evidence. Neither instance involved improper testimony in the form of a legal conclusion. Regarding the factual conclusions defendant cites, neither instance involved testimony from a witness on the ultimate issue in the case, defendant's guilt or innocence of the charges. However, even if this testimony did go directly to the ultimate issues, that would not make this testimony objectionable. MRE 704. Additionally, defendant was able to cross-examine each witness concerning the basis of the witness's factual statements, and the jury was free to accept or reject the witness's testimony. Therefore, we conclude that defendant has not established plain error with respect to this issue.

Defendant next argues that the restitution order entered by the trial court should be reversed. We disagree. We typically review a trial court's award of restitution for an abuse of discretion. *People v Newton,* 257 Mich App 61, 68; 665 NW2d 504 (2003). The trial court ordered defendant to pay restitution in the amount of $708,187.50 (the amount the PACs took in) minus $172,558.99 (the amount that the Attorney General's office seized before trial), or $535,628.51. Defendant argues that there was no evidence presented that the individuals who contributed to the PACs suffered any loss and that, of the money defendant collected, $127,000 went to political causes while the remainder was either seized by the Attorney General or went to operating costs.

Defendant was found guilty of using the Bush campaign's and the Gore campaign's mailing lists to collect the contributions to his PACs. The people who gave money to defendant's PACs testified that they intended for the money to go to the Bush campaign or the Gore campaign. Therefore, defendant collected money that would have likely gone to either the Bush campaign or the Gore campaign, and the campaigns suffered the loss of donations. More importantly, the people who gave money to the PACs also suffered losses because defendant was found guilty of using misrepresentations to obtain the donations. The fact that defendant apparently ultimately donated some of the money he collected to other Democratic or Republican causes does not change the fact that defendant represented to the people who contributed to the PACs that the money would go to the Bush campaign or the Gore campaign or to their legal funds for the recount. None of the money ultimately went to these causes. Additionally, the fact that defendant evidently did not personally benefit to the extent of $536,628.51 does not make that amount

an invalid amount of restitution. The amount of restitution should be the amount of loss attributable to defendant's illegal activity. *People v Lueth*, 253 Mich App 670, 692; 660 NW2d 322 (2002). Therefore, the trial court did not abuse its discretion in determining the amount of restitution.

Defendant also argues that he should be resentenced on the basis of *Blakely v Washington*, 542 US 296, 303-304; 124 S Ct 2531; 159 L Ed 2d 403 (2004), and *Apprendi v New Jersey*, 530 US 466, 490; 120 S Ct 2348; 147 L Ed 2d 435 (2000). We disagree. The United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi, supra* at 490. The Supreme Court recently reaffirmed this holding in *United States v Booker*, ___ US ___; 125 S Ct 738, 756; 160 L Ed 2d 621 (2005), and *Blakely, supra* at 301-302. However, in *Blakely*, the Court stated that the decision did not affect indeterminate sentencing schemes. *Blakely, supra* at 308-309.

Additionally, our Supreme Court in *People v Claypool*, 470 Mich 715, 731 n 14; 684 NW2d 278 (2004), stated that *Blakely* does not affect Michigan's sentencing scheme because

> Michigan, in contrast [to the sentencing scheme in *Blakely*], has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum. The maximum is not determined by the trial judge but is set by law. MCL 769.8. . . . The trial judge sets the minimum but can never exceed the maximum (other than in the case of a habitual offender, which we need not consider because *Blakely* specifically excludes the fact of a previous conviction from its holding).

This Court has concluded that it is bound by this statement by our Supreme Court that *Blakely* does not affect Michigan's sentencing system. *People v Drohan*, 264 Mich App 77, 89 n 4; 689 NW2d 750 (2004). As such, we must conclude that defendant's Sixth Amendment right to a jury trial was not violated and *Blakely* does not require defendant to be resentenced.

Defendant also claims that he was entitled to a hearing on restitution. However, defendant's attorney never made a request for an evidentiary hearing on restitution in the trial court, and defendant failed to provide any authority for his argument on this issue on appeal. Therefore we consider the issue to be waived. *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999).

Defendant also argues that the Legislature did not intend for offense variable 9 (OV 9), MCL 777.39, to include victims who suffered only financial injury, and that the trial court erred by determining that OV 9 should be scored at twenty-five points for defendant's larceny-by-conversion conviction. We disagree. This Court has previously held that OV 9 includes victims of financial injury. *People v Knowles*, 256 Mich App 53, 62; 662 NW2d 824 (2003). Additionally, we find that the trial court did not err by scoring OV 9 at twenty-five points for the larceny-by-conversion conviction. Evidence presented at trial showed that more than six hundred people contributed to defendant's two PACs as a result of defendant utilizing the campaigns' FEC disclosure lists. We believe that each of these people is properly considered a victim of defendant's criminal conduct in this case. The trial court can consider all evidence presented at the trial when calculating scores under the guidelines. *People v Ratkov (After Remand)*, 201 Mich App 123, 125; 505 NW2d 886 (1993). We

conclude that the trial court correctly scored OV 9 at twenty-five points.

Defendant next argues that his convictions violate his First Amendment rights of free speech and association. We disagree. We review constitutional issues de novo. *People v Haynes*, 256 Mich App 341, 345; 664 NW2d 225 (2003). Both the state and federal constitutions recognize the fundamental rights of free speech and expression and provide great protection for speech in the political arena. *Treasurer of the Committee to Elect Gerald D Lostracco v Fox*, 150 Mich App 617, 622-623; 389 NW2d 446 (1986). However, this protection is not absolute. *Id.* at 622. All the charges that defendant complains impinge on his First Amendment freedoms involve some sort of misrepresentation or fraud. This Court has held that even in the area of political speech, "[k]nowing misrepresentations are not constitutionally protected free speech." *Id.* at 623. Defendant's statements were not protected speech, and therefore defendant's prosecution because of these statements did not run afoul of the First Amendment.

Defendant also argues that his right to freedom of association was violated by his convictions. Although the First Amendment includes a protected freedom of association, *Griswold v Connecticut*, 381 US 479, 482-483; 85 S Ct 1678; 14 L Ed 2d 510 (1965), defendant was not prosecuted for associating with a political party. Defendant was prosecuted for making false representations that his PACs were affiliated with the presidential campaigns in order to obtain contributions. Therefore, we conclude that defendant's convictions did not abridge his right to freely associate.

Defendant also argues that his convictions for common-law fraud and larceny by conversion should be vacated because the statutes are unconstitutionally

vague. Again, we disagree. Whether a statute is constitutional is a question of law that we review de novo. *People v Piper*, 223 Mich App 642, 645; 567 NW2d 483 (1997). Statutes are presumed to be constitutional and valid, and courts are to construe statutes as constitutional unless there is a clear showing of unconstitutionality. *People v Hubbard* (*After Remand*), 217 Mich App 459, 483-484; 552 NW2d 493 (1996). In *People v Petrella*, 424 Mich 221; 380 NW2d 11 (1985), our Supreme Court set forth the following test:

> "A statute may be challenged for vagueness on the grounds that it       .
>
> —is overbroad, impinging on First Amendment freedoms, or
>
> —does not provide fair notice of the conduct proscribed, or
>
> —is so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine whether an offense has been committed." [*Id.* at 253, quoting *Woll v Attorney General*, 409 Mich 500, 533; 297 NW2d 578 (1980).]

Defendant first argues that the statute on common-law fraud is overbroad. As discussed earlier, although political speech and expression are at the core of First Amendment protection, *In re Chmura*, 461 Mich 517, 532; 608 NW2d 31 (2000), "the First Amendment does not shield fraud," and public deception is not protected speech, *Illinois ex rel Madigan v Telemarketing Assoc, Inc*, 538 US 600, 612; 123 S Ct 1829; 155 L Ed 2d 793 (2003). Any conviction for common-law fraud involves a finding of a "fraud or cheat," which would not be protected under the First Amendment. Therefore, the statute does not impinge on First Amendment freedoms and is not overbroad.

Defendant argues that both the statute on common-law fraud and the statute on larceny by conversion are vague and that an ordinary person must guess at their meanings. We disagree. " 'When presented with a vagueness challenge, we examine the entire text of the statute and give the words of the statute their ordinary meanings.' " *People v Sands*, 261 Mich App 158, 161; 680 NW2d 500 (2004), quoting *People v Morey*, 230 Mich App 152, 163; 583 NW2d 907 (1998), aff'd 461 Mich 325 (1999). Due process requires "that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden." *Rose v Locke*, 423 US 48, 50; 96 S Ct 243; 46 L Ed 2d 185 (1975).

Both the common-law fraud statute and the larceny-by-conversion statute provide sufficient warning of what is prohibited by the statute. Although the common-law fraud statute does not define the terms "gross fraud or cheat," the common meaning of these terms would encompass defendant's conduct in this case. "Fraud" is defined as "[a] knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment." Black's Law Dictionary (7th ed). "Cheat" is defined as "[t]o defraud; to practice deception." *Id*. "Gross" is defined as "flagrant and extreme . . . ." *Random House Webster's College Dictionary* (2000). Evidence presented at the trial showed that defendant used campaign lists from the Bush and Gore campaigns to solicit potential donors with letters implying an affiliation with the campaigns and candidates. Defendant solicited more than $700,000 using the campaign lists and misleading solicitation letters. We find that this clearly fits under a common definition of "gross fraud or cheat."

The larceny-by-conversion statute also clearly applied to defendant's conduct in this case. Defendant

argues that a reasonable person would not have known that the FEC disclosure lists belonged to the candidates or campaigns and would have thought that the lists were in the public domain. However, a reasonable person would know that the lists came from the candidates or campaigns because the lists were disclosed to the FEC by the candidates or campaigns. Additionally, a reasonable person would know that the lists were not information in the public domain to be used however one saw fit because of the warning on the FEC website that the information may not be used for solicitation purposes. The evidence presented at trial showed that defendant did just that. Therefore, the larceny-by-conversion statute was not unconstitutionally vague as applied to defendant.

Defendant next argues that he was the victim of vindictive prosecution. We disagree. Vindictive prosecution occurs when a defendant is prosecuted for asserting a constitutional right. *People v Ryan*, 451 Mich 30, 35-36; 545 NW2d 612 (1996). Defendant argues that he was prosecuted for exercising his First Amendment rights of free speech and association. However, as discussed earlier, defendant was not engaged in constitutionally protected speech when he sent out his solicitation letters. Because his speech was not constitutionally protected, defendant's prosecution based on the solicitation letters could not have been in retaliation for the exercise of a constitutional right. Defendant's argument that he was vindictively prosecuted is without merit.

Defendant next argues that the order of restitution violated his protection against double jeopardy. We disagree. We review an unpreserved double jeopardy issue for plain error. *People v Williams*, 265 Mich App 68, 72; 692 NW2d 722 (2005). The Double Jeopardy

Clause protects defendants from, among other things, multiple punishments for the same offense. *People v Nutt*, 469 Mich 565, 574; 677 NW2d 1 (2004). This protection "ensure[s] that the defendant's total punishment will not exceed the scope of punishment provided by the Legislature." *People v Dillard*, 246 Mich App 163, 165; 631 NW2d 755 (2001). In this case, it is clear that the trial court's order of restitution was not in excess of the punishment intended by the Legislature. MCL 780.766(2) requires a court to order restitution "in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law . . . ." The trial court's order of restitution did not violate the Double Jeopardy Clause.

Defendant finally argues that he was denied a fair trial because the two counts of larceny by conversion were not severed from the other counts. Defendant did not preserve this issue by raising it at the trial court level, and defendant fails to explain and provide authority for this argument on appeal. As such, we consider the issue to have been abandoned. *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).

Affirmed.