COLE, Circuit Judge,
dissenting.
Where, as here, a state court ignores or misapplies nearly every governing legal principle at issue, habeas corpus relief is warranted. I respectfully dissent from the majority’s conclusion that there was no “clearly established Federal law” that could form the basis for relief under 28 U.S.C. § 2254. General principles governing the federal preemption of state laws form a core component of our republic. Those principles, anchored in the Supremacy Clause of the Constitution, and articulated in Supreme Court cases spanning from McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579 (1819), to Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 121 S.Ct. 2404, 150 L.Ed.2d 532 (2001), provide clearly established federal law for habeas purposes. By any measure, the Michigan Court of Appeals unreasonably applied those principles in affirming Dewald’s convictions. Accordingly, I would affirm the district court’s well-reasoned grant of the writ.
I. WHEN FEDERAL LAW IS “CLEARLY ESTABLISHED”
To grant Dewald habeas relief, the majority would require a Supreme Court de- *304 cisión specifically holding that the FECA preempts state-law fraud claims. This approach frames the clearly established federal law inquiry far too narrowly. See Williams v. Taylor, 529 U.S. 362, 382, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (opinion of Stevens, J.) (“[R]ules of law may be sufficiently clear for habeas purposes even when they are expressed in terms of a generalized standard rather than as a bright-line rule”). As the Supreme Court has made clear, habeas relief is warranted not only when “the state court ... unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply,” but also when the state court “unreasonably refuses to extend that principle to a new context where it should apply. ” See id. at 407, 120 S.Ct. 1495 (opinion of the court) (emphasis added); accord Ramdass v. Angelone, 530 U.S. 156, 166, 120 S.Ct. 2113, 147 L.Ed.2d 125 (2000) (plurality opinion). Put another way, “AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied.” Panetti v. Quarterman, 551 U.S. 930, 953, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007) (internal quotation marks omitted).
To the contrary, “[cjertain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.” Yarborough v. Alvarado, 541 U.S. 652, 666, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). Thus, “[i]f the rule in question is one which of necessity requires a case-by-case examination of the evidence,” then courts “can tolerate a number of specific applications without saying that those applications themselves create a new rule.” Williams, 529 U.S. at 382, 120 S.Ct. 1495 (opinion of Stevens, J.) (quoting Wright v. West, 505 U.S. 277, 308, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992)). What could be more fundamental than our settled practice, set forth in the Constitution and made clear by nearly 200 years of Supreme Court precedent, that Congress may declare the supreme law of the land by preempting state legislation? More importantly for this appeal, how could the Supreme Court ever articulate a rule of law that “squarely addresses” — at least for the majority’s purposes — the thousands of federal and state statutes that could conceivably interact in a given factual setting?
The simple answer is that no rule of law could provide the certitude the majority demands by addressing every possible instance of preemption. But this is no reason to deny habeas relief outright. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), offers a helpful analogy. In Strickland, the Supreme Court announced a generalized legal standard that lower courts must apply to a variety of factual settings. Id. at 687, 104 S.Ct. 2052. There, the Court acknowledged the difficulty in articulating a bright-line rule that could apply to every variation of inadequate legal representation. See id. at 688, 104 S.Ct. 2052 (“More specific guidelines are not appropriate.”). Yet the Supreme Court has held, time and again, that Strickland’s generalized standards provide clearly established federal law for habeas purposes. See, e.g., Rompilla v. Beard, 545 U.S. 374, 380, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005) (granting ha-beas corpus relief under a Strickland ineffective assistance of counsel claim); Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (same).
The same holds true for claims of federal preemption. A bright-line rule could never account for the myriad permutations preemption might take. Therefore, the Supreme Court has established general principles governing preemption that are, of necessity and by design, broad enough to permit case-by-case application to the *305 precise federal and state laws at issue in a given dispute. See, e.g., Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (discussing general principles of federal preemption); Jones v. Rath Packing Co., 430 U.S. 519, 525-26, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977) (same); Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947) (same).
As such, I find unpersuasive the majority’s reasoning that Supreme Court cases applying general preemption principles in other contexts “do not, by definition, provide clearly established federal law in this case.” Op. at 300. The cases cited in support of this proposition are readily distinguished. In Wright v. Van Patten, 552 U.S. 120, 128 S.Ct. 743, 169 L.Ed.2d 583 (2008), the Seventh Circuit granted habeas relief because the Wisconsin Court of Appeals did not evaluate a defendant’s ineffective assistance of counsel claim under the more particularized standard from United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Van Patten, 552 U.S. at 125, 128 S.Ct. 743. But there, the Seventh Circuit first conceded that the case “present[ed] [a] novel ... question” of whether Cronic even ought to apply. Id. The Supreme Court reversed on the grounds that it was not “clearly established] that Cronic should replace Strickland in this novel factual context.” Id. In short, habeas relief was improper because the state court was not obligated to apply a particular legal rule. See id. Similarly, in Carey v. Musladin, 549 U.S. 70, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006), the Supreme Court reversed the grant of habeas relief on the grounds that “[n]o holding of this Court required the California Court of Appeal to apply the test of Williams and Flynn [involving prejudicial courtroom practices of state officials] to the spectators’ conduct here.” Id. at 77, 127 S.Ct. 649 (emphasis added). Again, habeas relief was improper because the state court was not obligated to apply a particular governing standard. Id.
Here, in contrast, no one contests that the state court was obligated under the Supremacy Clause and long-standing Supreme Court precedent to consider De-wald’s preemption argument. The Michigan Court of Appeals acknowledged as much in its opinion, when it attempted (haphazardly) to evaluate Dewald’s claim under the very governing standards the majority would now have us believe were not clearly established. See People v. Dewald, 267 Mich.App. 365, 705 N.W.2d 167, 173 (2005). The State’s attorney conceded the same at oral argument when he admitted that the state court was required to consider the general principles governing federal preemption and agreed that what we are really debating is the reasonableness of the state court’s application of those principles.
While the majority insists that this case involves a novel question, its novelty pertains only to the state court’s application of preemption principles — not their existence or the state court’s obligation to consider them. As such, the Supreme Court’s general principles governing federal preemption provide the clearly established federal law necessary to grant habe-as relief.
II. GENERAL PRINCIPLES GOVERNING FEDERAL PREEMPTION
The Supreme Court has “clearly established” several general principles that govern federal preemption of state legislation. See, e.g., Crosby v. Nat’l Foreign Trade Council, 530 U.S. 363, 372, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000) (declaring it a “fundamental principle” of our republic “that Congress has the power to preempt state *306 law”); Cipollone, 505 U.S. at 516-17, 112 S.Ct. 2608 (collecting cases). Preemption generally arises in one of three forms: express preemption, field preemption, or conflict preemption. Cipollone, 505 U.S. at 516, 112 S.Ct. 2608. This case involves express preemption, which occurs when Congress enacts legislation with a preemption clause, thereby explicitly declaring the preeminence of federal law in a given regulatory area. See, e.g., Lorillard Tobacco Co., 533 U.S. at 541, 121 S.Ct. 2404; Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 95-101, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Three clearly established principles guide any express preemption analysis.
First, it is well settled that “[t]he purpose of Congress is the ultimate touchstone” of any preemption analysis. Cipollone, 505 U.S. at 516, 112 S.Ct. 2608 (quoting Retail Clerks v. Schermerhorn, 375 U.S. 96, 103, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963)). Accordingly, when Congress has enacted an express preemption clause, the central duty of a reviewing court is “to identify the domain expressly pre-empted” by that clause, because “an express definition of the pre-emptive reach of a statute ... supports a reasonable inference ... that Congress did not attempt to preempt other matters.” Lorillard Tobacco Co., 533 U.S. at 541, 121 S.Ct. 2404 (citations omitted). This duty includes, where possible, following an agency’s regulation defining the scope of federal preemption. See City of New York v. FCC, 486 U.S. 57, 63-64, 108 S.Ct. 1637, 100 L.Ed.2d 48 (1988).
Second, when determining whether federal legislation preempts state law, courts must look not only to the state law as written, but also to how it is interpreted and applied in a given factual setting. State laws of general applicability, while not necessarily preempted on their face, may nevertheless be preempted “as applied.” See Am. Airlines, Inc. v. Wolens, 513 U.S. 219, 226-28, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995) (holding the Illinois Consumer Fraud Act preempted by the Federal Airline Deregulation Act to the extent the state law applied to airline frequent flier programs); Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 525, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981) (holding a state workers’ compensation regime preempted by ERISA to the extent state law applied to pension plans governed by federal law); Rath Packing Co., 430 U.S. at 526, 97 S.Ct. 1305 (“This [preemption] inquiry requires us to consider the relationship between state and federal laws as they are interpreted and applied, not merely as they are written.”). As the Supreme Court has explained, it would create an “utterly irrational loophole” to the general principles of federal preemption “if state impairment of the federal scheme should be deemed acceptable so long as it is effectuated by the particularized application of a general statute.” Morales v. Trans World Airlines, Inc., 504 U.S. 374, 386, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992).
Third, because the states are independent sovereigns in our federal system, courts generally “start with the assumption that the historic police powers of the States were not to be superseded by [federal legislation] unless that was the clear and manifest purpose of Congress.” Rice, 331 U.S. at 230, 67 S.Ct. 1146. Accordingly, “when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily ‘accept the reading that disfavors preemption’ ” in areas of traditional state regulation. Altria Grp., Inc. v. Good, 555 U.S. 70, 77, 129 S.Ct. 538, 172 L.Ed.2d 398 (2008) (quoting Bates v. Dow Agrosciences LLC, 544 U.S. 431, 449, 125 S.Ct. 1788, 161 L.Ed.2d 687 (2005)). This presumption of non-preemption does not apply, however, when states regulate in an area “where there has been a history *307 of significant federal presence.” United States v. Locke, 529 U.S. 89, 108, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000).
This discussion of the general principles governing federal preemption underscores my belief that the real issue on appeal is whether the state court unreasonably applied preemption principles — not whether they were clearly established. As demonstrated, the Supreme Court had clearly established this body of federal law prior to the state-court determination in the instant case. Moreover, these governing principles are, of necessity, broad enough to permit case-by-case application to the precise federal and state laws at issue in a given dispute. By 2005, the Supreme Court had applied these principles in a host of cases ranging from state regulation of the purchase of foreign goods, Crosby, 530 U.S. at 366, 120 S.Ct. 2288, to state disability benefits requirements, Shaw, 463 U.S. at 96, 103 S.Ct. 2890, to local ordinances governing plasma donation, Hillsborough Cnty., Fla. v. Automated Med. Labs., Inc., 471 U.S. 707, 713, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985), just to name a few. Lower courts, ours included, have consistently applied these principles to the FECA as well. Bunning v. Kentucky, 42 F.3d 1008, 1011-12 (6th Cir.1994); Janvey v. Democratic Senatorial Campaign Comm., Inc., 712 F.3d 185, 200-02 (5th Cir.2013). I therefore turn to consider the reasonableness of the state court’s determination in light of the governing law on federal preemption.
III. REASONABLENESS OF THE STATE COURT’S DETERMINATION
The majority states that the appropriate inquiry under AEDPA is “not whether a federal court believes a state court’s determination ... was incorrect but whether that determination was unreasonable — a substantially higher threshold.” Mirzayance, 556 U.S. at 123, 129 S.Ct. 1411. No quarrel there. I note for good measure that when “the [legal] standard is a general standard,” as it is here, “a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.” Id. Nevertheless, the Supreme Court has made clear the following:
That the standard is stated in general terms does not mean that the [state court’s] application was reasonable.... Nor does AEDPA prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts different from those of the case in which the principle was announced. The statute recognizes, to the contrary, that even a general standard may be applied in an unreasonable manner. These principles guide a reviewing court that is faced, as we are here, with a record that cannot, under any reasonable interpretation of the controlling legal standard, support a certain legal ruling.
Panetti, 551 U.S. at 953, 127 S.Ct. 2842 (citations and internal quotation marks omitted). Where, as here, the state court either ignores or misapplies nearly every governing legal principle, I believe habeas relief is warranted, regardless of how general the controlling legal standards may be.
A. The State Court Failed to Identify the Domain Expressly Preempted by Federal Law
As the magistrate judge in Dewald’s federal habeas case properly concluded after a thorough review of the state-court opinion at issue, “The decision of the Michigan Court of Appeals ignored virtually every principle established by the Supreme Court to govern preemption analysis.” Dewald v. Wrigglesworth, No. 1:08-cv-906, *308 2012 WL 3206021, at *21 (W.D.Mich. Jan. 9, 2012). Most glaringly, the state court made no effort — as was its central duty under Supreme Court precedent — to analyze the FECA’s express preemption clause or to identify the domain of state law expressly preempted. See Lorillard Tobacco Co., 533 U.S. at 541, 121 S.Ct. 2404 (citing Cipollone, 505 U.S. at 517, 112 S.Ct. 2608).
Had the Michigan Court of Appeals considered the FECA’s preemption clause, or had it consulted the FEC’s implementing regulations, which also preempt state law under the plain language of 2 U.S.C. § 453(a), the state court would have concluded, as the district court concluded, that Dewald’s prosecutions were preempted. See Dewald, 2012 WL 3206021, at *16. Congress enacted a broad preemption clause in § 453(a), which states that the FECA and its regulations “supersede and preempt any provision of State law with respect to election to Federal office.” 2 U.S.C. § 453(a) (emphasis added). Congress followed this broad preemption clause with a single, narrow exception (inapplicable here) governing the use of funds for the purchase or construction of an office building for political parties. Id. § 453(b). Congress enacted no other exceptions to the FECA’s preemptive reach. Had Congress desired to do so, surely it knew how. See Bilski v. Kappos, 561 U.S. 593, 130 S.Ct. 3218, 3250, 177 L.Ed.2d 792 (2010) (‘We generally presume that Congress does not, one might say, hide elephants in mouseholes.” (citation and internal quotation marks omitted)).
The Michigan Court of Appeals also failed to heed the Supreme Court’s unanimous holding in City of New York v. Federal Communications Commission, which states that courts must follow an agency’s regulation defining the scope of preemption absent congressional intent to the contrary. See 487 U.S. at 63-64, 108 S.Ct. 2260. Here, the state court failed to cite or even consider the FEC’s preemption regulations. See Dewald, 705 N.W.2d at 175. Had the court of appeals done so, and had it fulfilled its obligation to consider an “as applied” challenge to the state laws at issue, the court would have recognized that Dewald’s prosecutions were preempted by 11 C.F.R. § 108.7(b)(1)-(b)(2), which provide that “Federal law supersedes State law concerning the [] organization and registration of political committees supporting Federal candidates [and] [disclosure of receipts and expenditures by Federal candidates and political committees.”
The majority finds it “significant” that the FEC’s regulations elsewhere provide that the “[p]rohibition of false registration, voting fraud, theft of ballots, and similar offenses ” are not preempted by the FECA. Op. at 302 (citing Id. § 108.7(c)(4) (emphasis added)). I believe this is a red-herring — offered as little more than a post-hoc justification for an otherwise unreasonable application of clearly established federal law. Even so, the majority’s reliance on § 108.7(c)(4) falls short under the most basic canons of statutory construction. The state’s attorney conceded as much at oral argument by declaring, “this [prosecution] isn’t about voter fraud; this is just about fraud ... if it were about voter fraud ... we’d be in a better position because of 11 C.F.R. § 108.7(c)(4).”
By articulating a narrow exception to the preemptive reach of the FECA in § 108.7(c)(4), the FEC was merely acknowledging a long-standing constitutional dichotomy concerning which aspects of federal elections the states may regulate. As the Supreme Court explained, states have no inherent authority to regulate elections to federal office. U.S. Term Limits, Inc. v. Thornton,. 514 U.S. 779, *309 803-04, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995). The Elections Clause of Article I delegates some powers to the states, but only to regulate the “Times, Places and Manner of holding Elections for Senators and Representatives.” U.S. Const, art. I, § 1, cl. 1. This grant of authority to prescribe the mechanisms for holding congressional elections “encompasses matters like ‘notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns.’ ” Cook v. Gralike, 531 U.S. 510, 523-24, 121 S.Ct. 1029, 149 L.Ed.2d 44 (2001) (quoting Smiley v. Holm, 285 U.S. 355, 366, 52 S.Ct. 397, 76 L.Ed. 795 (1932)). In short, states are delegated the authority to promulgate “procedural regulations,” such as the time and place of elections and the prevention of fraud and corruption in the voting process itself. See id. at 523, 121 S.Ct. 1029. The states have no authority to regulate federal elections more broadly, even under statutes of general applicability.
11 C.F.R. § 108.7(c)(4) recognizes this dichotomy and nothing more. Under “the commonsense canon” of noscitur a sociis, “a word is given more precise content by the neighboring words with which it is associated.” United States v. Williams, 553 U.S. 285, 294, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). Thus, the term “voting fraud,” which is sandwiched between the terms “false registration” and “theft of ballots,” pertains only to fraud in the process of voting — not fraud more generally. Likewise, the catch-all phrase “similar offenses” means only similar offenses with respect to the process of voting — not all other offenses relating to federal elections. See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 114-15, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) (“[Under] the maxim ejusdem generis ... [w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.” (citation and internal quotation marks omitted)). De-wald’s prosecutions did not involve voting fraud. Accordingly, 11 C.F.R. § 108.7(c)(4) — which the Michigan Court of Appeals did not even cite — cannot serve as the basis for saving the court’s otherwise unreasonable application of clearly established federal law.
B. The State Court Failed to Consider an “As Applied” Preemption Argument
Dewald has consistently argued that even though the State prosecuted him under laws of general applicability, the conduct for which he was convicted was expressly governed by the FECA and its accompanying regulations. He therefore maintains that federal law preempted his prosecutions. The Michigan Court of Appeals failed to consider Dewald’s “as applied” preemption argument. Instead, the state court affirmed his convictions by summarily concluding that the state statutes under which he was convicted “are not specifically preempted by 2 USC 453.” Dewald, 705 N.W.2d at 176. This failure to consider Dewald’s “as applied” argument further demonstrates that the state court unreasonably applied clearly established federal law.
As the magistrate judge properly concluded, by prosecuting Dewald for the allegedly unlawful use of a candidate’s name and the conversion of other committees’ donor lists, “the Michigan Attorney General intruded into territory directly covered by the FECA and its regulations.” Dewald, 2012 WL 3206021, at *16-17 (citing various statutory and regulatory provisions governing the precise conduct at is *310 sue in Dewald’s prosecutions, including 2 U.S.C. §§ 432(b)(4), 441d(a)(3), and 438(a)(4) as well as 11 C.F.R. §§ 102.14(a), 110.11, and 104.15). Where, as here, Congress expressly preempts state regulation in a particular domain, prosecutions under state law are prohibited. See Nat’l Meat Ass’n v. Harris, — U.S.—, 132 S.Ct. 965, 970, 181 L.Ed.2d 950 (2012) (holding that express preemption clause in the Federal Meat Inspection Act preempts California penal code provision on the slaughter of hogs); see also Pennsylvania v. Nelson, 350 U.S. 497, 500-02, 76 S.Ct. 477, 100 L.Ed. 640 (1956) (prohibiting prosecutions under the Pennsylvania Sedition Act due to federal preemption). This is so regardless of whether the state laws at issue are consistent with the federal objective. See Morales, 504 U.S. at 387, 112 S.Ct. 2031; Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 830, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). The FECA and its accompanying regulations preempted Dewald’s prosecutions under the Michigan statutes “as applied,” and the state court’s refusal even to consider this argument further underscores the unreasonableness of its decision.
C. The State Court Improperly Applied the Presumption Against Preemption
Finally, the Michigan Court of Appeals improperly applied the general presumption against preemption. Because the power to regulate federal elections never inhered in the states as a general police power, Gralike, 531 U.S. at 522-23, 121 S.Ct. 1029, the state court should not have applied the presumption against preemption to the facts of this case, see Locke, 529 U.S. at 107-08, 120 S.Ct. 1135. Accordingly, the state court yet again unreasonably applied clearly established federal law in affirming Dewald’s convictions.
IV. CONCLUSION
Jerome Dewald may not be the most sympathetic habeas petitioner ever to appear before this court. He swindled hundreds of thousands of dollars out of his fellow citizens, all in the name of personal financial gain. Nevertheless, by enacting the FECA, Congress made a clear determination that the decision to prosecute him for these particular offenses was left to the federal government and the federal government alone. The State of Michigan impermissibly intruded into this precisely drawn, integrated system of federal enforcement procedures. As such, the FECA preempted Dewald’s state prosecutions, and as described above, the Michigan Court of Appeals’s determination to the contrary was unreasonable under clearly established federal law. “Fair-minded jurists” could not disagree. See Harrington v. Richter, — U.S.—, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011). For these reasons, I would affirm the district court’s grant of habeas corpus relief.