PEOPLE v MELTON

Docket No. 257036. Submitted December 6, 2005, at Detroit. Decided
    January 24, 2006, at 9:20 a.m. Vacated in part by order entered on
    February 15, 2006. 269 Mich App 801. Leave to appeal sought.

    Corinne M. Melton was convicted by a jury in the Tuscola Circuit
    Court on six counts of larceny of a firearm and on one count each
    of first-degree home invasion, larceny in a building, and possession
    of a firearm during the commission of a felony. The defendant was
    sentenced as a fourth-offense habitual offender. At sentencing, the
    court, Patrick R. Joslyn, J., denied the plaintiff's motion for a new
    trial and scored offense variable (OV) 9 at ten points, indicating
    that there were two victims placed in danger of injury or loss of
    life, where the only injuries were loss of property by larceny. The
    defendant appealed, claiming that there was insufficient evidence
    in support of her convictions, that the convictions were against the
    great weight of the evidence, and that OV 9 relates only to physical
    injury, not financial injury, and should have been scored at zero
    points instead of ten points.

    The Court of Appeals held:

    1. Insufficiency of the evidence, stemming from conflicting
    testimony or witness credibility, is not a basis for granting a new
    trial unless it can be said that directly contradictory testimony was
    so far impeached that it was deprived of all probative value or that
    the jury could not believe it, or that it contradicted indisputable
    physical facts or defied physical realities. Absent any of those
    conditions, the trial court must defer to the jury's determination.
    In this case, the jury chose to discredit the testimony of the
    defendant, and the Court may not interfere with that judgment.

    2. OV 9, MCL 777.39, relates only to placing a victim in danger
    or within the zone of danger of injury or loss of life, not to financial
    injury. The number of financial injury victims is already included
    in the sentencing guidelines calculations in this case in OV 16,
    MCL 777.46(2)(a), which allows the cumulation of the values of the
    property involved. However, two earlier panels of the Court found
    that OV 9 applies to financial injuries, and, pursuant to MCR
    7.215(J)(1), the published opinions in those cases must be followed

in this case. The issue concerning OV 9 should be submitted to a special conflict panel of the Court of Appeals under MCR 7.215(J)(3).

Affirmed.

CRIMINAL LAW — APPEALS — SUFFICIENCY OF EVIDENCE.

> A claim of insufficiency of evidence, stemming from conflicting testimony or witness credibility, is not a basis for granting a new trial unless it can be said that directly contradictory testimony was so far impeached that it was deprived of all probative value or that the jury could not believe it, or that it contradicted indisputable physical facts or defied physical realities; absent any of those conditions, a court must defer to the jury's determination.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Mark E. Reene*, Prosecuting Attorney, and *David Tanay*, Assistant Attorney General, for the people.

*Nieuwenhuis Law Offices, P.C.* (by *Helen C. Nieuwenhuis*), for the defendant.

Before: CAVANAGH, P.J., and COOPER and DONOFRIO, JJ.

PER CURIAM. Defendant Corinne Michelle Melton appeals as of right her jury trial convictions of six counts of larceny of a firearm[1] and one count each of first-degree home invasion,[2] larceny in a building,[3] and possession of a firearm during the commission of a felony.[4] Defendant was sentenced as a fourth habitual offender[5] to concurrent terms of 10 to 25 years' imprisonment for the larceny of a firearm and home invasion

---

[1] MCL 750.357b.

[2] MCL 750.110a(2) (breaking and entering and committing a larceny within a dwelling while armed with a dangerous weapon).

[3] MCL 750.360.

[4] MCL 750.227b.

[5] MCL 769.12.

convictions, and 10 to 15 years' imprisonment for the larceny in a building conviction. Defendant was also sentenced to a consecutive two-year term for the felony-firearm conviction. We affirm defendant's convictions. We also affirm defendant's sentences, but only because we are required to do so by this Court's previous opinion in *People v Knowles*.[6]

### I. FACTUAL BACKGROUND

Defendant's convictions arose from a theft at the home of Mary Ann Elbers and her son, Jeffrey Elbers, on the afternoon of June 3, 2003. Mr. Elbers testified that defendant left a message on his answering machine that day at 1:45 p.m., while he and his mother were both at work.[7] After the Elbers listened to this message, Mr. Elbers walked down the hallway toward his bedroom. He immediately noticed that the lock was broken on a gun cabinet located in the hallway. Six guns were missing from the cabinet—five belonging to Ms. Elbers and one belonging to Mr. Elbers. The Elbers subsequently searched their home to determine if any other items were missing. They discovered that a floor safe located in a nearby bedroom had been opened, and that a camcorder, stamps, coins, jewelry, and $22 had been taken. The Elbers also noticed that someone had closed the blinds and drapes around their home while they were gone.

Mr. Elbers testified that he was acquainted with defendant, as she was dating one of his friends. Defendant had been in the Elbers' home on only one prior occasion. Mr. Elbers testified that, during this visit, defendant asked to use his bathroom. When she did not

---

[6] *People v Knowles*, 256 Mich App 53, 61-63; 662 NW2d 824 (2003).

[7] Ms. Elbers testified that she could not understand the message. Mr. Elbers did not testify regarding the content of this message at trial.

return in a reasonable amount of time, Mr. Elbers sent her boyfriend to locate her. Mr. Elbers testified that the gun cabinet is located next to the bathroom and the safe is visible from the hallway.

Defendant took the stand on her own behalf and testified that she came to the Elbers' home on June 3 to drop off a marine battery for Mr. Elbers. She testified that she parked her maroon and silver truck in the driveway, entered the Elbers' garage through an unlocked door, and left the battery and a note inside. Mr. Elbers corroborated defendant's testimony that she had promised to give him this battery. However, he stated that he did not find a battery or note inside the garage. Moreover, Samuel Vyse and Ronald Haske testified that, while they were repairing a roof across the street, they saw a woman matching defendant's description and driving a maroon and silver truck pull into the Elbers' driveway. Mr. Vyse and Mr. Haske further testified that they saw the woman enter the Elbers' home and remain inside for approximately one hour.

## II. EVIDENTIARY SUPPORT FOR DEFENDANT'S CONVICTION

Defendant contends that the prosecution introduced insufficient evidence to support her convictions. Defendant further argues that the trial court improperly denied her motion for a new trial, as her convictions were against the great weight of the evidence.

In sufficiency of the evidence claims, we review the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt.[8] "[C]ircumstantial evidence and reasonable inferences arising from that evidence

---

[8] *People v Hunter*, 466 Mich 1, 6; 643 NW2d 218 (2002).

can constitute satisfactory proof of the elements of a crime."[9] We review a great weight of the evidence claim to determine whether the evidence preponderates heavily against the verdict to the extent that it would be a miscarriage of justice to allow the verdict to stand.[10] However, conflicting testimony and questions of witness credibility are insufficient grounds for granting a new trial.[11] "Unless it can be said that directly contradictory testimony was so far impeached that it 'was deprived of all probative value or that the jury could not believe it,' or contradicted indisputable physical facts or defied physical realities, the trial court must defer to the jury's determination."[12]

It is undisputed that someone entered the Elbers' home without permission on June 3, 2003, and stole six handguns and various other items of value. Defendant challenges the jury's determination that she was the individual who entered the home and took these items. Defendant admitted that she was at the Elbers' home on the afternoon of the robbery. Although defendant testified that she only entered the garage to leave a marine battery and a note for Mr. Elbers, neither of these items were ever located. Furthermore, Mr. Vyse and Mr. Haske testified that defendant was inside the home for an extended period of time. It is the sole province of the jury to judge the credibility of the opposing witnesses. The jury chose to discredit defendant's testimony and we may not interfere with that judgment.[13] Accordingly, we must find that the prosecution presented sufficient evidence to support defendant's convictions and that the trial court properly denied her motion for a new trial.

---

[9] *People v Lee*, 243 Mich App 163, 167-168; 622 NW2d 71 (2000).

[10] *People v Lemmon*, 456 Mich 625, 627; 576 NW2d 129 (1998).

[11] *Id.* at 643.

[12] *Id.* at 645-646 (citations omitted).

[13] See *id.* at 643, 645-646.

### III. OV 9

Defendant also argues that the sentencing court erroneously assigned 10 points for Offense Variable (OV) 9 and, therefore, imposed improper sentences for the convictions. A sentencing court has discretion in determining the number of points to be scored, provided that there is evidence on the record that adequately supports a particular score.[14] However, we review issues of statutory construction de novo.[15]

Pursuant to MCL 777.39, a sentencing court must score OV 9 as follows:

(1) Offense variable 9 is number of victims. Score offense variable 9 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) Multiple deaths occurred................. 100 points

(b) There were 10 or more victims........ 25 points

(c) There were 2 to 9 victims................ 10 points

(d) There were fewer than 2 victims...... 0 points

(2) All of the following apply to scoring offense variable 9:

(a) Count each person who was placed in danger of injury or loss of life as a victim

(b) Score 100 points only in homicide cases.[16]

While the general language of subsection (1) suggests that OV 9 should be scored regardless of the crime involved, we do not believe that this was the Legislature's intent.

---

[14] *People v Hornsby*, 251 Mich App 462, 468; 650 NW2d 700 (2002).

[15] *Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003).

[16] MCL 777.39.

> The doctrine of *ejusdem generis* provides that, if a law contains general words and an enumeration of particular subjects, those general words are presumed to include only things of the same kind, class, character, or nature as the subjects enumerated. The doctrine of *noscitur a sociis* [similarly] provides that words or phrases should be given meaning by their context.[17]

Pursuant to the more specific instructions in subsection (2), it is clear that the Legislature only intended OV 9 to apply when a victim is placed in actual danger or is placed within the zone of danger. Accordingly, OV 9 should only apply when there is a "danger of injury or loss of life."

The instructions provided in relation to OV 9 in the sentencing guidelines manual further clarify that OV 9 should only be scored for a crime against property when a victim is placed in actual danger or is placed within the zone of danger. When scoring the guidelines for a crime against property, the number of victims is already taken into account in the scoring of OV 16, degree of property damage. Pursuant to MCL 777.46(2)(a), the sentencing court may "add[] together the aggregate value of the property involved," including property owned by multiple victims. In this case, the sentencing court did, in fact, score defendant for both variables. The court scored OV 16 at five points, reflecting that the stolen property "had a value of $1,000.00 or more but not more than $20,000.00."[18]

The sentencing court's "double dip" raised defendant's OV Level from a II to a III. Including defendant's score of 10 points for OV 9 and score of five points for

---

[17] *Adams Outdoor Advertising, Inc v Canton,* 269 Mich App 365; 711 NW2d 391 (2006), citing *Sands Appliance Services, Inc v Wilson,* 463 Mich 231, 242; 615 NW2d 241 (2000), and *Griffith v State Farm Mut Automobile Ins Co,* 472 Mich 521, 533; 697 NW2d 895 (2005).

[18] MCL 777.46(1)(c).

OV 16, her total OV score was 30, which placed her in OV Level III. With a Prior Record Variable Level of E, her minimum sentencing range as a fourth habitual offender was 78 to 260 months' imprisonment for the home invasion conviction. Had the court declined to score OV 9, defendant's OV score would place her in OV Level II, with a minimum sentencing range of 72 to 240 months' imprisonment.

However, two panels of this Court have found that OV 9 also applies to financial injuries. In *People v Knowles*, the panel determined that the sentencing court properly scored ten points for OV 9, as the defendant caused a financial injury to both a credit union and an account holder by forging a check against the account.[19] In making this determination, however, the panel relied solely on a case in which the defendant was convicted of second-degree murder.[20] Relying on *Knowles*, the panel in *People v Dewald*[21] was required to find that OV 9 was properly scored where the defendant illegally solicited funds for two improperly created political action committees.[22] We may not remand to the trial court to correct defendant's sentence, because we are bound by court rule to follow *Knowles*.[23] The fact that defendant's OV Level has been increased from II to III may seriously affect considerations relating to parole even though defendant's ultimate sentence would fit into either scoring range. As the "calculation of both the sentencing guidelines and the parole guidelines depends on the presentence investigation report," any

---

[19] *Knowles, supra* at 61-62.

[20] *Id.* at 62, citing *People v Kimble*, 252 Mich App 269, 274; 651 NW2d 798 (2002).

[21] *People v Dewald*, 267 Mich App 365; 705 NW2d 167 (2005).

[22] *Id.* at 380.

[23] MCR 7.215(J)(1).

error in scoring the defendant's guidelines gives the Parole Board the authority to add years to an inmate's sentence.[24]

We affirm defendant's sentences because we are required to do so by this Court's opinion in *Knowles*. But for that decision, we would remand for the correction of the judgment of sentence or resentencing. Consequently, we recommend that this case be submitted to a special conflict panel pursuant to MCR 7.215(J)(3).

Affirmed.

---

[24] *Morales v Parole Board*, 260 Mich App 29, 45; 676 NW2d 221 (2003).