PEOPLE v MELTON

Docket No. 257036. Submitted April 12, 2006, at Lansing. Decided July 20, 2006, at 9:05 a.m. Leave to appeal sought.

Corinne M. Melton was convicted by a jury in the Tuscola Circuit Court on six counts of larceny of a firearm and one count each of first-degree home invasion, larceny in a building, and possession of a firearm during the commission of a felony. The court, Patrick R. Joslyn, J., denied the defendant's motion for a new trial and sentenced the defendant as a fourth-offense habitual offender. Under MCL 777.39 of the sentencing guidelines, the court scored offense variable (OV) 9 (number of victims) at ten points. The defendant appealed, claiming that there was insufficient evidence to support her convictions, that her convictions were against the great weight of the evidence, and that OV 9 should have been scored at zero points because OV 9 relates only to victims of physical injuries and not to victims of financial injuries. The Court of Appeals, CAVANAGH, P.J., and COOPER and DONOFRIO, JJ., affirmed the defendant's convictions, concluding that the prosecution presented sufficient evidence. Because it was required to follow the holding in *People v Knowles*, 256 Mich App 53 (2003), the Court also affirmed the defendant's sentences. Had it not been obligated to follow *Knowles*, however, the Court would have held that the Legislature only intended OV 9 to apply when a victim is placed in actual danger or is placed within the zone of danger and would have remanded for correction of the judgment of sentence or resentencing. 269 Mich App 542 (2006). The Court of Appeals convened a special panel to resolve the conflict between this case and *Knowles* and vacated part III of its prior opinion in this case. 269 Mich App 801 (2006).

After consideration by the special panel, the Court of Appeals *held*:

A trial court must not score OV 9 for financial injuries. *Knowles* is overruled. While the defendant's sentences would be within the appropriate guidelines range even if OV 9 had not been scored, rescoring is nonetheless necessary because a scoring error may affect such things as the calculation of the defendant's parole eligibility, for example.

Guidelines scoring reversed and case remanded for correction of guidelines score.

DAVIS, P.J., would conclude that the trial court erred by scoring OV 9 at ten points because no one was placed in danger of a physical injury. While the Legislature did not explicitly restrict the types of injuries covered by OV 9 by inserting the word "physical" anywhere in MCL 777.39, it also did not direct scoring for financial injuries or other nonphysical injuries. The remainder of the statute, examined in its grammatical and structural context, clearly indicates that only physical injuries to the person of a victim were contemplated.

NEFF, J., concurring, agreed with Judge DAVIS's opinion with respect to the interpretation of OV 9, which concludes that OV 9 does not encompass the danger of financial injury, but wrote separately because the case raised the additional question whether the trial court correctly scored OV 9 on the basis that the defendant's criminal conduct nevertheless placed two victims in danger of injury. These two individuals were residents of the occupied dwelling that the defendant entered, and the trial court concluded that they should be counted as victims because there was a possibility that they would come home during the home invasion, placing them in danger of injury or loss of life. This basis for scoring OV 9 warrants consideration.

MURRAY, J., dissenting, would hold that the plain language of MCL 777.39 requires the scoring of OV 9 if a victim is placed in danger of a physical or nonphysical injury, including a financial injury. This same result occurs when the statute is read in the context of the sentencing guidelines statutes, particularly MCL 777.22. *Knowles* should not be overruled, and the trial court's ruling in this case should be affirmed.

SENTENCES — SENTENCING GUIDELINES — OFFENSE VARIABLES — VICTIMS.

A sentencing court must not score offense variable 9 of the sentencing guidelines, which concerns the number of victims of the crime, for a financial injury (MCL 777.39).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Mark E. Reene*, Prosecuting Attorney, and *David Tanay* and *Brian O. Neill*, Assistant Attorneys General, for the people.

*Nieuwenhuis Law Offices, P.C.* (by *Helen C. Nieuwenhuis*), for the defendant.

Before: DAVIS, P.J., and NEFF, FITZGERALD, SAAD, BANDSTRA, MARKEY, and MURRAY, JJ.

DAVIS, P.J. Pursuant to MCR 7.215(J), this Court convened a special panel to resolve a conflict between the prior, partially vacated opinion in this case, *People v Melton*, 269 Mich App 542; 711 NW2d 430 (2006), and *People v Knowles*, 256 Mich App 53; 662 NW2d 824 (2003). The relevant issue in both cases was the interpretation and application of MCL 777.39, which governs a sentencing court's scoring of offense variable (OV) 9. In accordance with MCR 7.215(J)(1), the prior *Melton* panel was required to follow the precedent set by *Knowles*. Absent this requirement, the prior panel would have reversed the sentencing decision of the trial court. We now overrule *Knowles*.

Under MCL 777.39(2)(a), the sentencing court must score points for "each person who was placed in danger of injury or loss of life as a victim." Specifically at issue here is whether OV 9 can only be scored when the victim is placed in danger of *physical* injury. The trial court scored OV 9 at ten points on the basis of a danger of *financial* injury. The prior *Melton* panel affirmed on the basis of *Knowles* and *People v Dewald*, 267 Mich App 365; 705 NW2d 167 (2005), both of which held that OV 9 should be scored for financial injuries. However, the panel opined that it would not do so if it was not required to do so by *Knowles* and *Dewald*. We now hold that a plain reading of MCL 777.39 requires OV 9 to be scored only when there is a danger of physical injury.

The facts are set forth with particularity in the prior case. *Melton, supra* at 544-545. In summary, defendant broke into the home of Mary Ann Elbers and her son, Jeffrey Elbers, while neither one was at home. Defendant stole six guns, money, and some other items

belonging to each of the Elbers. A jury convicted defendant on six counts of larceny of a firearm and one count each of first-degree home invasion, larceny in a building, and possession of a firearm during the commission of a felony. At sentencing, defendant argued that OV 9 should not be scored because no one was physically injured or even at home when she committed the crimes. The trial court scored ten points for OV 9, resulting in an overall OV score of 30, which placed defendant in OV level III of the sentencing grid. *Melton, supra* at 548-549. If OV 9 had not been scored, defendant would have been in OV level II. The trial court sentenced defendant to concurrent terms of ten to 25 years' imprisonment for the larceny of a firearm and home invasion convictions and ten to 15 years' imprisonment for the larceny in a building conviction, and to a consecutive two-year term for the felony-firearm conviction. Even if OV 9 had not been scored, defendant's sentences would still be within the appropriate guidelines range, but, as the prior *Melton* panel noted, a scoring error may still affect a defendant through such things as its effect on the calculation of parole eligibility. *Melton, supra* at 549-550.

We review de novo the interpretation of a statute, with the goal of giving effect to the intent of the Legislature. *People v Spann*, 250 Mich App 527, 529-530; 655 NW2d 251 (2002), aff'd 469 Mich 904 (2003). Clearly written language must be enforced, and "[n]othing will be read into a statute that is not within the manifest intention of the Legislature as gathered from the act itself." *Id.* at 530, 532. We may not engage in construction of clear statutory language, nor may we "speculate regarding the probable intent of the Legislature beyond the language expressed in the statute." *People v Hock Shop, Inc*, 261 Mich App 521, 524, 528; 681 NW2d 669 (2004). Judicial interpretation is only

appropriate when a statute is susceptible to more than
one interpretation, in which case "courts must consider
the object of the statute, the harm it is designed to
remedy, and apply a reasonable construction that best
accomplishes the statute's purpose." *People v Fennell*,
260 Mich App 261, 265; 677 NW2d 66 (2004). We
perceive no such ambiguity here.

MCL 777.39 provides in full:

(1) Offense variable 9 is number of victims. Score
offense variable 9 by determining which of the following
apply and by assigning the number of points attributable to
the one that has the highest number of points:

(a) Multiple deaths occurred ........................ 100 points

(b) There were 10 or more victims ................ 25 points

(c) There were 2 to 9 victims ........................ 10 points

(d) There were fewer than 2 victims ............. 0 points

(2) All of the following apply to scoring offense variable 9:

(a) Count each person who was placed in danger of
injury or loss of life as a victim.

(b) Score 100 points only in homicide cases.

The Legislature did not explicitly restrict the types of
injuries by inserting the word "physical" anywhere in
the statute. It is therefore superficially logical to con-
clude that no such restriction was intended, in which
case OV 9 could be scored for financial injuries.

However, such an interpretation would also result in
a conclusion that OV 9 should be scored for *any* sort of
injury. We note there is no direction to score for "finan-
cial" injuries. Nor is there a direction to include "psy-
chological" injuries or, perhaps, "social" injuries. In-
deed, there is a veritable cornucopia of possible types of
injuries one could conceivably suffer as a result of a
criminal act. Concluding that OV 9 is not limited to

physical injuries effectively mandates that a trial court score points whenever a purported victim is placed in danger of *anything* that could be considered harmful, whether to the victim's person, pocketbook, reputation, self-esteem, or dignity.

We do not believe that the Legislature intended such an open-ended application, especially when the word "injury" is viewed in the context of the rest of the statute. Our Supreme Court has explained that, in the absence of a clear indication that the Legislature intended us to do otherwise, this Court must examine the language of a statute in its grammatical and structural context. *People v Gillis*, 474 Mich 105, 114-115; 712 NW2d 419 (2006). The remainder of the statute clearly indicates that only physical injuries were contemplated.

Under MCL 777.39(2)(a), scoring should "[c]ount each person who was placed in danger of injury or loss of life as a victim." The statute further directs that the maximum number of points should be scored only in homicide cases in which "[m]ultiple deaths occurred." MCL 777.39(1)(a) and (2)(b). The only kind of "injury" that can plausibly be juxtapositioned with "loss of life" is physical injury to one's person. We cannot conclude that the Legislature intended to categorize financial loss with the same gravity as physical injury and death.

The Legislature has mandated that OV 9 should be scored for all crimes against a person, property, public order, public trust, or public safety. MCL 777.22. However, this simply means that the Legislature intended a sentencing court to score OV 9 for any property crime that happens to result in the additional risk of physical injury. Certainly, this constitutes a directive to *consider* whether there has been a risk of physical injury, even when imposing sentences for a category of crimes

unlikely to pose such a risk. However, if no risk of physical injury was posed, OV 9 will be scored at zero points, as permitted by MCL 777.39(1)(d). We see no way to interpret MCL 777.22 as an expression of the Legislature's intent to score OV 9 for financial injuries or, as discussed, any other kinds of injuries. Rather, it appears that the Legislature was sufficiently concerned about physical injuries that it wished sentencing courts to take them into account no matter what kind of underlying crime was committed.

Finally, we agree with the dissent that OV 16 measures the aggregate amount of property damage, rather than the number of victims who sustained property damage. However, we do not see any significance to this, and we agree with the original *Melton* panel's conclusion that OV 16 already accounts for financial injuries. There is nothing irrational about the Legislature concluding that property damage is best measured by placing on it an aggregate dollar value or, in the alternative, accounting for the property's sentimental value, while simultaneously concluding in a separate context that the best way to quantify physical risk is by counting the number of people exposed to that risk. It is axiomatic that human lives carry a very different value from that of property or money.

Because defendant's sentences were within the appropriate guidelines range in any event, we do not disturb them. However, the trial court should not have scored OV 9 at ten points here because no one was placed in danger of physical injury. We therefore reverse the trial court's scoring of OV 9 and remand for correction of defendant's guidelines score.

FITZGERALD and MARKEY, JJ., concurred with DAVIS, P.J.

NEFF, J. (*concurring*). I concur in the lead opinion by Judge DAVIS with respect to the interpretation of offense variable (OV) 9, which concludes that OV 9 does not encompass the danger of financial injury. However, I write separately because this case raises the additional question whether the trial court's scoring of OV 9 was correct on the basis that defendant's criminal conduct nevertheless placed two victims in danger of injury.

In this case, the trial court concluded that there were two victims, not because both suffered financial injuries, but because they were residents of the occupied dwelling and there was a possibility that they would come home during the home invasion, placing them "in danger of injury or loss of life," MCL 777.39(2)(a). The trial court reasoned that Mary Ann and Jeffrey Elbers, who resided in the home, should therefore be counted as victims.

Under MCL 777.39, the number of victims must be scored by counting "each person who *was placed in danger of injury . . .*":

(1) Offense variable 9 is number of victims. Score offense variable 9 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) Multiple deaths occurred ..................... 100 points

(b) There were 10 or more victims ................ 25 points

(c) There were 2 to 9 victims ..................... 10 points

(d) There were fewer than 2 victims ............... 0 points

(2) All of the following apply to scoring offense variable 9:

(a) Count each person who *was placed in danger of injury* or loss of life as a victim.

(b) Score 100 points only in homicide cases. [MCL 777.39 (emphasis added).]

In my view, the basis for scoring OV 9 recognized by the trial court warrants consideration.

MURRAY, J. (*dissenting*).

### I. INTRODUCTION

This case involves the interpretation and application of MCL 777.39, which dictates a sentencing court's scoring of offense variable (OV) 9. In particular, the statute requires the sentencing court to score points for "each person who was placed in danger of injury or loss of life as a victim." MCL 777.39(2)(a). The specific question is whether OV 9 can only be scored when a victim is placed in danger of a physical injury. In *People v Melton*, 269 Mich App 542; 711 NW2d 430 (2006), this Court affirmed the sentencing court's scoring of OV 9 at ten points for the two victims placed in danger of injury. *Id.* at 548-550. Nevertheless, the *Melton* panel opined that, were it permitted, it would hold that "OV 9 should only be scored for a crime against property when a victim is placed in actual danger or is placed within the zone of danger." *Id.* at 548. The panel concluded that financial injury is already taken into account when scoring OV 16, which combines victims for scoring the degree of property damage and, when determining the aggregate value of the property at issue, includes the value of property owned by multiple victims. *Id.* According to the panel, the sentencing court "double dipped" when it scored both OV 9 and OV 16. However, because both *People v Knowles*, 256 Mich App 53; 662 NW2d 824 (2003), and *People v Dewald*, 267 Mich App 365; 705 NW2d 167 (2005), held that OV 9 should be scored at ten points for financial injuries to two different victims, the panel determined that it was prevented from remanding this case for resentencing. *Melton, supra* at 549.[1]

---

[1] We agree with Judge NEFF that this case could also have been resolved through application of the language "in danger of" within MCL 777.39.

Contrary to the *Melton* panel and the lead opinion, we would hold that the plain language of the statute, which requires scoring of OV 9 where the victims were "placed in danger of injury," includes being placed in danger of both physical and financial injury.

## II. ANALYSIS

MCL 777.39 requires a sentencing court to count the number of persons placed in "danger of injury or loss of life" in scoring OV 9:

> (1) Offense variable 9 is number of victims. Score offense variable 9 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
> (a) Multiple deaths occurred .................... 100 points
>
> (b) There were 10 or more victims ................ 25 points
>
> (c) There were 2 to 9 victims ...................... 10 points
>
> (d) There were fewer than 2 victims ............... 0 points
>
> (2) All of the following apply to scoring offense variable 9:
>
> (a) Count each person who was placed in danger of injury or loss of life as a victim.
>
> (b) Score 100 points only in homicide cases.

The *Melton* panel reasoned that the Legislature did not intend for OV 9 to apply to victims who merely suffered financial injury:

> While the general language of subsection (1) suggests that OV 9 should be scored regardless of the crime involved, we do not believe that this was the Legislature's intent.

However, because the full Court decided that the "financial injury" part of the *Melton* decision was outcome determinative, and that a conflict panel should be convened to resolve the issue, we are bound to decide that issue.

> "The doctrine of *ejusdem generis* provides that, if a law
> contains general words and an enumeration of particular
> subjects, those general words are presumed to include only
> things of the same kind, class, character, or nature as the
> subjects enumerated. The doctrine of *noscitur a sociis*
> [similarly] provides that words or phrases should be given
> meaning by their context."
>
> Pursuant to the more specific instructions in subsection
> (2), it is clear that the Legislature only intended OV 9 to
> apply when a victim is placed in actual danger or is placed
> within the zone of danger. Accordingly, OV 9 should only
> apply when there is a "danger of injury or loss of life."
> [*Melton, supra* at 547-548 (citation omitted).]

Although we see the facial appeal of this argument,
we believe the words used by the Legislature preclude
that holding. This is primarily so because the plain
language of the statute does not limit the number of
victims to those "in danger of *physical* injury." Rather,
it contains without modification the words "injury" and
"victim," which we believe play a crucial role in the
statute. "Injury" is defined generally as "[t]he violation
of another's legal right, for which the law provides a
remedy; a wrong or injustice," and "[h]arm or damage,"
Black's Law Dictionary (7th ed), while "victim" means
"[a] person harmed by a crime, tort, or other wrong,"
*id*. See *Halloran v Bhan*, 470 Mich 572, 578; 683 NW2d
129 (2004) (stating that resort to a dictionary is proper
for defining undefined statutory terms). Because the
Legislature provided no restrictions to these words
(such as "physical" injury), we cannot either.

Additionally, when read in context, the statute indi-
cates that the Legislature intended for OV 9 to be
scored for a nonphysical injury, including damage to
property. The sentencing guidelines divide offenses into
six different offense categories: crimes against a person,
crimes against property, crimes involving a controlled

substance, crimes against public order, crimes against
public trust, and crimes against public safety. MCL
777.5(a) to (f). Only the offense variables that are
statutorily designated for a particular offense category
should be scored. MCL 777.22. Although MCL 777.22
limits scoring for certain offenses, the statute instructs
a sentencing court to score OV 9 for all crimes against a
person, *property*, public order, public trust, and public
safety. Thus, to interpret the statute at issue as limiting
scoring of OV 9 to victims in danger of *physical* injury is
inconsistent with the guidelines' requirement to score
OV 9 for all crimes in the designated offense categories
because there are crimes within those categories in
which it is unlikely that the victim would be placed in
danger of any physical harm, i.e., embezzlement, false
pretenses, fraud, and uttering and publishing.[2]

Here, the *Melton* panel ignored the expansive nature
of subsection 2(a) and sought to narrow the definition of
"victim" by applying OV 9 only when "a victim is placed
in actual danger or is placed within the zone of danger"
of a physical injury. *Melton, supra* at 548. According to
the plain language used by the Legislature, subsection
2(a) does not require the court to count only a person
placed in danger of a *physical* injury. Rather, it incor-
porates as victims all persons placed in danger of any
injury, including a financial injury. MCL 777.22.

Not surprisingly, our conclusion is supported by this
Court's opinion in *Knowles*, in which we upheld the
assignment of ten points where two financial victims
suffered direct injuries. *Knowles, supra* at 61-63. In
*Knowles*, the defendant was convicted of uttering and
publishing. *Id.* at 54. The defendant took a check from

---

[2] See e.g., MCL 750.174 and 750.181 (embezzlement); MCL 750.218
(false pretenses); MCL 750.274 and 750.279 (fraud); MCL 750.249
(uttering and publishing).

Amanda Schroeder's checkbook, made the check out to himself for $225, signed Schroeder's name, and wrote "loan" on the check. *Id.* at 55-56. The defendant's father then cashed the check at his credit union for the defendant because the defendant indicated that he did not have a bank account. The check was returned to the credit union because of "nonsufficient funds" in the account. *Id.* at 56. Thereafter, the defendant's father repaid the credit union the $225. *Id.* at 56-57. The sentencing court scored ten points for OV 9 on the basis of its conclusion that there were two victims placed in danger of injury. *Id.* at 61. The defendant asserted that the sentencing court erroneously counted the credit union as a victim. *Id.* at 61-62. This Court disagreed and held that "the trial court properly treated the credit union as a victim because it was placed in danger of, and in fact suffered, *financial injury* in being wrongly deprived of $225 for a period as a direct result of defendant's crime." *Id.* at 62 (emphasis added).

The *Melton* panel further reasoned that a restrictive interpretation was appropriate because OV 16, which scores the degree of property damage, already accounts for the number of victims. *Melton, supra* at 548. Although it is true that, pursuant to MCL 777.46, the sentencing court may add together the aggregate value of the property obtained, damaged, lost, or destroyed, including the property owned by multiple victims, OV 16 addresses the total value of the property involved, not the number of victims affected by the crime. Thus, under OV 16, a defendant would receive the same score for the theft of $100,000 worth of property belonging to one victim as for the theft of the same value of property belonging to five different victims. Only OV 9 addresses the breadth of the crime by counting the number of victims injured.

We recognized this distinction in *Dewald*, in which this Court concluded that the trial court properly scored OV 9 at 25 points because each of the more than 600 people the defendant defrauded in his operation of two political action committees was properly considered a victim of his criminal actions. *Dewald, supra* at 380, citing *Knowles, supra* at 62. Thus, through subsection 2(a), the statutory sentencing guidelines recognize the difference between injury to one victim versus injury to multiple victims in the perpetration of a crime because, under subsection 2(a), every person who was placed in danger of injury is counted without limitation of the type of injury.

Accordingly, we would hold that the trial court properly scored OV 9 at ten points because defendant stole property belonging to two separate victims. There was evidence that, among other items, defendant stole six guns from the cabinet in the Elberses' home, "five belonging to Ms. Elbers and one belonging to Mr. Elbers." *Melton, supra* at 544. Therefore, both Mary Ann and Jeffrey Elbers suffered financial injury and were properly considered victims of defendant's criminal conduct. Accordingly, we would affirm the trial court's ruling.

SAAD and BANDSTRA, JJ., concurred with MURRAY, J.