*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEQUAN JOSE DAVIS,

        Defendant-Appellant.

UNPUBLISHED
May 20, 2021

No. 351084
Muskegon Circuit Court
LC No. 2018-001647-FC

Before: K.F. KELLY, P.J., and SERVITTO and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of assault with intent to murder, MCL 750.83, felon in possession of a firearm, MCL 750.224f, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant, as a third-offense habitual offender, MCL 769.11, to 26 to 60 years' imprisonment for the assault with intent to murder conviction, 5 to 10 years for the felon in possession of a firearm conviction, and two years for each felony-firearm conviction. We affirm.

This case arises out of an altercation between defendant and the victim, Jackie Cherry, Jr., on January 4, 2018. Cherry's stepson, Aveon Coleman, had a disagreement with defendant and when Coleman's mother spoke to defendant to try to resolve the situation, defendant was disrespectful to her. Cherry and Coleman later saw defendant at a Mobil gas station and pulled in to try to resolve the issues. Cherry and defendant got out of their vehicles while Coleman stayed in Cherry's vehicle. Cherry and defendant engaged in a verbal argument that escalated to a point where defendant shot Cherry, who was unarmed, several times. A video recording of the incident was captured by a witness. Coleman picked Cherry up and drove him to the hospital, where he underwent several major surgeries due to the gunshot wounds. As previously indicated, the jury found defendant guilty of assault with intent to murder, felon in possession of a firearm, and two counts of felony-firearm. This appeal followed.

On appeal, defendant first argues that the trial court denied defendant his fundamental right to present a defense and to confront and cross-examine the witnesses against him when it forbade defense counsel from proving witness bias. Specifically, defendant takes issue with the trial court

-1-

granting the prosecution's motion to prevent the defense from presenting evidence or questioning Coleman as to why he appeared to testify at trial in jail clothing. We find no error.

"To preserve an issue for appellate review, a party must object below and specify the same ground for objection that it argues on appeal." *People v Bosca*, 310 Mich App 1, 46; 871 NW2d 307 (2015). Although defense counsel objected to this request based on the relevancy of Coleman's testimony regarding him being in jail, he failed to argue during trial that limiting the scope of cross-examination would violate his constitutional rights to confront the witnesses presented against him or present a full defense. "[A]n objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground." *People v Dewald*, 267 Mich App 365, 377; 705 NW2d 167 (2005). Therefore, this issue is not preserved for appellate review.

Claims of constitutional error are reviewed de novo. *People v Golba*, 273 Mich App 603, 615; 729 NW2d 916 (2007). However, this Court reviews unpreserved constitutional issues for plain error affecting the defendant's substantial rights. *People v Bowling*, 299 Mich App 552, 557; 830 NW2d 800 (2013). Under the plain error rule, a defendant bears the burden of establishing that: (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights. *People v Wiley*, 324 Mich App 130, 150-151; 919 NW2d 802 (2018). "To establish that a plain error affected substantial rights, there must be a showing of prejudice, i.e., that the error affected the outcome of the lower-court proceedings." *Id*. at 151 (quotation marks and citation omitted). "[R]eversal is only warranted if the defendant is actually innocent or the error seriously undermined the fairness, integrity, or public reputation of the trial." *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006).

"There is no doubt that based on the Fourteenth Amendment's Due Process Clause and the Sixth Amendment's . . . Confrontation Clause[], the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012) (quotation marks and citation omitted). However, a criminal defendant's right to present a complete defense is not without limitation. *Id*. "[A]n accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id*. at 474 (quotation marks and citation omitted).

Moreover, a defendant's constitutional right to cross-examination does not confer an unlimited right to admit all relevant evidence or cross-examine on any subject. *People v Biddles*, 316 Mich App 148, 153-154; 896 NW2d 461(2016), citing *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). The trial court retains discretion to place reasonable limitations on the scope of cross-examination to avoid other important interests, such as witness harassment, prejudice, or confusion of the issues. *Id*. Nonetheless, "[a] limitation on cross-examination that prevents a defendant from placing before the jury facts from which bias, prejudice, or lack of credibility of a prosecution witness might be inferred constitutes denial of the constitutional right of confrontation." *People v Gaines*, 306 Mich App 289, 315-316; 856 NW2d 222 (2014), quoting *People v Kelly*, 231 Mich App 627, 644; 588 NW2d 480 (1998) (quotation marks and citation omitted).

On the first day of trial, and before Coleman was called to testify, the prosecution moved to "exclude any questions or testimony regarding [Coleman] being in jail currently," because, the

prosecution argued, it was "not relevant to his testimony today." Defense counsel objected on the ground that Coleman was in jail because he was avoiding a subpoena to testify in this case, which, according to defense counsel, "implie[d] something to the jury as to whether or not they can trust what he ha[d] to say." In response, the prosecution clarified that Coleman was actually in jail for failing to appear for a trial in which he was the defendant. The trial court granted the prosecution's motion because the legal reason for Coleman's incarceration had nothing to do with the trial at hand.

Defendant argues that the relevance of why Coleman was incarcerated was important to flesh out any biases Coleman may have. Defendant points out that, given the prosecution's admissions that it had made sure Coleman was picked up on the outstanding bench warrant and it was concerned about Coleman's appearance in this case, it was important to address whether, for example, Coleman had been made any promise of leniency in the unrelated case against him in return for his testimony at defendant's trial. This claim by defendant is purely speculative. Coleman was clearly a witness to the shooting. And there was no evidence or indication that he had tried to avoid testifying in this matter or was in any way biased. In fact, during trial, it was revealed that defendant was Coleman's cousin, whom he regularly spent time with, and that Coleman was not close to Cherry until after the shooting. Where the reason for Coleman's incarceration had nothing to do with the case against defendant and the record is devoid of any evidence of witness bias, defendant has not shown how the court plainly violated his right to present a defense or cross-examine Coleman by precluding him from pursuing this line of questioning.

Moreover, even if the trial court impermissibly infringed on defendant's constitutional rights by limiting the scope of cross-examination on Coleman, defendant has not shown how the error affected the outcome of the proceedings. There was testimony not only from Coleman, but also from Cherry's wife, to whom defendant confessed to shooting Cherry. Moreover, a video recording of the shooting was captured and admitted into evidence. Accordingly, without being able to prove any prejudice, defendant cannot prevail on this claim of constitutional error.

Defendant next argues that he was denied a fair trial when the prosecution denigrated defense counsel in arguments before the jury, vouched for a witness, and elicited sympathy for its witnesses. Defendant further argues that, alternatively, defense counsel was ineffective for failing to object to the prosecution's arguments. We disagree.

To preserve a claim of prosecutorial misconduct, defendant was required to contemporaneously object to the alleged misconduct or to request a curative instruction. *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008), citing *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). Defendant neither made objections to the alleged acts of misconduct here, nor did he request a curative instruction. "Where a defendant fails to object to an alleged prosecutorial impropriety, the issue is reviewed for plain error" affecting substantial rights. *People v Aldrich*, 246 Mich App 101, 110; 631 NW2d 67 (2001), quoting *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (quotation marks and citation omitted). Specifically, in order to show plain error warranting relief, defendant must show that: (1) an error occurred, (2) the error was plain, meaning clear or obvious, and (3) the plain error affected the defendant's substantial rights. *People v McLaughlin*, 258 Mich App 635, 645; 672 NW2d 860 (2003). Under the plain error rule, this Court reverses "only if the defendant is actually innocent or the error

seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Rodriguez*, 251 Mich App 10, 24; 650 NW2d 96 (2002).

The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007), citing *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). Prosecutorial misconduct issues are decided on a case-by-case basis, and the reviewing court examines the pertinent portion of the record and evaluates a prosecutor's remarks in context, *People v Jackson*, 313 Mich App 409, 426; 884 NW2d 297 (2015), and in light of defense arguments and the relationship the remarks bear to the evidence admitted at trial, *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005). Generally, prosecutors are accorded great latitude regarding their arguments and conduct. *People v Cooper*, 309 Mich App 74, 90; 867 NW2d 452 (2015). Prosecutors are "free to argue the evidence and all reasonable inferences from the evidence as it relates to [their] theory of the case." *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (citations omitted). However, prosecutors cannot personally attack the credibility of defense counsel. *McLaughlin*, 258 Mich App at 646. And, a prosecutor can neither "vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness," nor can he ask the jury to decide the case based on sympathy. *Bahoda*, 448 Mich at 276.

Defendant claims that the prosecution improperly denigrated defense counsel before the jury in its opening statement by stating:

> Well, that's it. It's not complicated. Don't pay attention to whatever smoke screen or distractions come your way. Don't lose sight of what's important. Even if a witness is reluctant to testify, focus on that video. Focus on why they may be reluctant to testify.

The prosecution's remark, when taken in context, does not denigrate defense counsel. This remark directed the jury to pay attention to the evidence the prosecution felt was most important and to not be distracted by evidence the prosecution anticipated would be presented to it for that purpose.

Defendant asserts that the prosecution denigrated defense counsel in its rebuttal closing argument as well, by stating, "[Defense counsel] himself said we can conjecture all we want. Yes, he can guess. He can tell a story too. But whether or not you believe [defense counsel's] story is based on that evidence."

The above remarks were in response to defense counsel's statements in his closing argument. Defense counsel said, "[w]hen you're . . . a lawyer, one of the things you do is tell a story. You're a story teller. [The prosecutor] is telling you his story. I'm going to tell you my story." Defense counsel further stated "we can make conjecture based on . . . a reasonable suspicion." The prosecution properly responded to defense counsel's statements and did not denigrate defense counsel. The same holds true for the prosecution's statements during rebuttal that:

> [Defense counsel] will call into question all kinds of things that the police did or didn't do. They didn't go back and get those phone records. [Cherry's wife] didn't

even know what the number was.  How would they do that[?]  Smoke and mirrors.
Distractions.

In his closing argument, defense counsel stated that the jury was told there was no need for fingerprints, it was implied that the jury did not need definitive evidence linking the gun used in the incident or the clothing of the shooter to defendant and questioned "[d]id they go back and get those phone numbers from [Cherry's wife]?  No.  He says you don't need that."  The prosecution thus was responding to defense counsel's arguments and indicating that counsel's arguments were distractions from the evidence that was presented.  The prosecution's reference to "smoke and mirrors" and "[d]istractions" was simply its creative way of focusing the jurors so that they are not distracted from the material facts of the case as noted above.  See *Rodriguez*, 251 Mich App at 40 (using "smoke and mirrors" in the closing argument was not considered misconduct).

Defendant next asserts the following as improper vouching and eliciting of sympathy by the prosecution during its opening argument:

For instance, I anticipate that you will hear from the victim in this case.

\*\*\*

Remember all that evidence when you wonder why he can't tell you what happened.  He doesn't remember.  He remembers very, very little from that day because of the trauma that his body went through.

\*\*\*

In addition to the video, I anticipate you will hear the testimony of somebody else who was very nearby when this occurred.  His name is Aveon Coleman.  And I will give you a summary of the case here in a few minutes, and you will understand why he was there.  I will be a hundred percent honest with you.  I don't know what he's going to say.  He is the eyewitness that we have that can remember what occurred I think.  Remember in the beginning we went through all the things that you can look at . . . when determining whether to believe the testimony of a witness or not.  I'm going to ask that especially with him, you pay attention to those things.  You pay attention to where he is, who is present, who may otherwise be present in this courtroom, and all of the other factors that the judge said to you that you can look at when determining if somebody is telling the truth.  You will see what I'm talking about when I present him to you.  And again, I don't know exactly what he's going to say.  Just remember why.

In the challenged remarks, the prosecution was outlining what its various witnesses may testify to and explaining that the focus should be on the evidence presented, even if a specific witness did not recall what transpired on the day of the incident.  This is the purpose of an opening statement.  "[T]he purpose of an opening statement is to tell the jury what the advocate will attempt to prove."  *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 503; 668 NW2d 402 (2003).

Additionally, the prosecution clearly told the jury that it did not know with certainty what Coleman would say, and that it was up to the jurors to determine who was credible and truthful.

Defendant claims that the prosecution also engaged in improper vouching and the eliciting of sympathy during its closing argument by stating:

> One of those other witnesses obviously was Aveon Coleman. I think it was abundantly clear that he did not want to be here; that he did not want to testify. You heard officers testify that they had to pry the information from him. You saw - and the Judge again, and I will remind you of this a couple times, about what to pay attention to when evaluating whether a witness was telling the truth or not.

> He got really choked up there when he said: That's my family. I don't want to point him out. I don't want to say he did this because that's my family. You can't fake that. That was sincere. That was genuine. . . . If could help it, he wouldn't say that [defendant] did this. If that was an option, that's the option he would obviously prefer.

These statements were commentary on Coleman's testimony, specifically, that Coleman was reluctant to testify because he did not want to be labeled as a snitch and place his family's life in jeopardy. The fact that the prosecution stated, "You can't fake that. That was sincere. That was genuine[]" did not make the statements improper, because the crucial inquiry is not whether the prosecutor used "magic words," such as "I know" or "I believe," but rather, whether the prosecution was improperly vouching by suggesting possession of extrajudicial information. *People v Reed*, 449 Mich 375, 399; 535 NW2d 496 (1995). The prosecution never indicated that it had personal or special knowledge, or possessed extrajudicial information, that Coleman was credible. Moreover, in light of defense counsel's opening statement opining that Coleman was not believable, and closing argument attacking Coleman's veracity, the prosecution was free to argue from the evidence that Coleman was credible despite the testimony and arguments to the contrary. A prosecutor does not commit misconduct if it argues "from the facts and testimony that the witnesses at issue were credible or worthy of belief", and is further "free to argue the evidence and all reasonable inferences arising from it as they relate to his or her theory of the case." *Dobek*, 274 Mich App at 66.

In sum, the prosecution did not denigrate defense counsel, improperly vouch for Coleman's credibility or elicit sympathy from the jurors, and therefore, there was no plain error. *Carines*, 460 Mich at 763. Furthermore, defendant has failed to establish the requisite prejudice flowing from the statements, had prosecutorial misconduct or error occurred. *McLaughlin*, 258 Mich App at 645. Finally, the trial court's jury instructions cured any error because the instructions specifically provided that statements made by the attorneys were not evidence and that the facts of the case and the credibility of witnesses were for the jury to decide. Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors. *People v Henry*, 315 Mich App 130, 150; 889 NW2d 1 (2016). As a result, there was no prosecutorial misconduct during the prosecution's opening statement or rebuttal arguments. As such, defendants claim that defense counsel should have objected to the challenged statements and his failure to do so constituted ineffectiveness of counsel necessarily fails. Counsel is not required to make futile or frivolous objections. *People v Hardy*, 494 Mich 430, 445; 835 NW2d 340 (2013). Because the challenged

statements did not amount to prosecutorial misconduct, any objection to the alleged instances of prosecutorial misconduct would have been futile.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto
/s/ Anica Letica